The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of the period of temporary total disability benefits.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Key Risk Management Services, Inc., as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The date of the alleged injury by accident was August 12, 1994.
5. Plaintiffs average weekly wage was $961.54, which yields a maximum compensation rate of $466.00 per week.
6. Plaintiff is still employed by defendant.
7. Plaintiffs wages were continued by defendant through November 6, 1997. Prior to that date, plaintiff does not have any lost wages as a result of his alleged injury by accident.
8. The long-term benefits received by plaintiff subsequent to November 6, 1997 were employer-funded.
9. The issues for determination are:
a. Did plaintiff sustain an injury by accident arising out of and in the course of his employment on August 12, 1994?
b. If so, is plaintiffs claim barred by the provisions of N.C. Gen. Stat. 97-24, which requires that a claim be filed with the Industrial Commission within two years after an injury by accident?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the deputy commissioner, plaintiff was a forty-eight year old high school graduate who completed classes toward a degree in science from Cape Fear Tech. He was hired to work in construction with defendant in 1984.
2. In 1988, plaintiff became a technician in the health physics area, where his duties included climbing to check radiation levels in certain work areas. Plaintiff worked a twelve-hour shift.
3. On August 12, 1994, plaintiff was working in a construction tent area. As plaintiff opened a herculate door, an air conditioner duct fell from the ceiling, striking him on the top of the head and in the neck area.
4. Plaintiff reported this to his supervisor, Danny Holder, shortly thereafter. Although plaintiff initially had a headache, he declined further medical treatment at that time because he did not realize the severity of the injury.
5. On September 9, 1994, plaintiff was seen at the Emergency Room at Cape Fear Hospital with complaints of low back and leg pain after being hit on the head at work. Plaintiff was initially diagnosed with L5-S1 radiculopathy.
6. After he began to experience problems walking, plaintiff sought medical treatment with his primary care physician, Dr. Charles Herring, on September 27, 1994. An MRI was ordered, and Dr. Herring authorized plaintiff to remain out of work for two weeks. Plaintiff went to work despite the doctors note.
7. On October 4, 1994, after the MRI report was received, Dr. Herring placed plaintiff on bed rest due to a disc herniation. He referred plaintiff to Dr. Robert Wilfong, a neurosurgeon.
8. On October 24, 1994, Dr. Wilfong performed a partial hemilaminectomy at L5-S1 with removal of a free fragment that was consistent with an acute injury. Plaintiff was authorized to remain out of work for five weeks.
9. Plaintiff underwent neck traction therapy upon his release to return to work on light duty on November 28, 1994. Plaintiff also had restrictions of no lifting over twenty-five pounds, no climbing, and sitting and standing as necessary. Plaintiff continued to have headaches and leg spasms.
10. On September 19, 1995, Dr. Wilfong recommended surgery at L4-5 due to plaintiffs ongoing symptoms.
11. Plaintiff sought a second opinion from Dr. Allan Friedman at Duke University Medical Center on October 18, 1995. Dr. Friedman stated that part of plaintiffs symptoms were due to the earlier surgery and no additional surgery was recommended.
12. After plaintiff continued to experience headaches, leg spasms at night, and pain in his feet and the backs of his legs, plaintiff stopped working in May of 1997 and has not returned.
13. Before plaintiffs 1994 back surgery, plaintiffs superintendent, Bob Kury, told plaintiff not to worry because the company would take care of the injury under workers compensation.
14. On January 19, 1996, plaintiff received a letter from HealthSource regarding his treatment being processed through workers compensation. Plaintiff showed the letter to Tony Priest, his supervisor, to find out what plaintiff should do. Patricia Bressler, a benefits administrator with defendant, was to check on this, as Mr. Priest advised her that plaintiff had been injured on the job.
15. Fred Ellington, a corporate officer, was contacted regarding the controversy between the health insurance and workers compensation benefits. Mr. Ellington advised that defendant had accepted plaintiffs claim under workers compensation.
16. Defendant retained Angela Barclay to perform case management for plaintiffs claim.
17. Plaintiff relied upon the assurances and representations from Mr. Kury and Mr. Ellington and did not file a claim for workers compensation benefits.
18. On December 3, 1996, plaintiff, his supervisors, and Ms. Barclay met. Plaintiff learned that defendant was not paying his claim as workers compensation through a letter from Mr. Paul L. Cranfill, defendants workers compensation attorney, to Mr. Kury.
19. In January of 1997, the new superintendent informed plaintiff that defendant would not pay for his treatment.
20. Plaintiff received a second letter from HealthSource about the treatment. He met with Ms. Bressler, who referred the matter to Michelle Parkins in Human Resources to make sure the bills were paid under workers compensation.
21. On June 27, 1996, Dr. Herring ordered a functional capacity evaluation in which plaintiff was found capable of performing medium level work on an eight hour basis.
22. While plaintiff had a pre-existing degenerative disk condition and intermittent episodes of low back pain, plaintiff was capable of performing his work duties until his condition was aggravated and exacerbated by the injury by accident on August 12, 1994.
23. Plaintiff did not file a claim until May 6, 1997; however, this delay was not unreasonable, but rather was due to his reliance on defendants assurances that his claim was being handled as an accepted workers compensation claim.
24. As stipulated by the parties, defendant continued plaintiffs wages subsequent to the injury. Plaintiff received his regular wages through November 6, 1997.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on August 12, 1994. N.C. Gen. Stat. 97-2(6). As a result of the compensable injury, plaintiff sustained an aggravation of his pre-existing low back condition.
2. Defendant is equitably estopped from asserting the two-year filing requirement in N.C. Gen. Stat. 97-24 as a bar to plaintiffs claim. In the instant case, a corporate officer, his supervisor, and other management representatives assured plaintiff that defendant would pay for his claim under workers compensation. Plaintiff relied reasonably and to his detriment on these assurances. It was more than two years after the date of his injury before plaintiff was informed that defendant would not be handling the matter as an accepted workers compensation injury. Belfieldv. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44 (1985).
3. As a result of the compensable injury, plaintiff is entitled to total disability compensation at the rate of $466.00 per week for the period from November 6, 1997 and continuing until further order of the Commission. N.C. Gen. Stat. 97-29.
4. Defendant is entitled to a credit for payments made to plaintiff pursuant to the employer-funded disability plan. N.C. Gen. Stat. 97-42.
5. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Subject to a reasonable attorneys fee herein approved and to credit for payments made to plaintiff pursuant to the employer-funded disability plan, defendant shall pay total disability compensation at the rate of $466.00 per week for the period from November 6, 1997 and continuing until further order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. A reasonable attorneys fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from the accrued sum due plaintiff and paid directly to counsel. Thereafter, every fourth check shall be paid directly to counsel.
3. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation that may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
5. Defendant shall pay the costs.
This is the _____ day of October, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER